

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| 3018 PERSHALL, LLC, | ) | No. ED113029 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 21SL-CC01525 |
| | ) | |
| OUTFRONT MEDIA, LLC, et al., | ) | Honorable Virginia Lay |
| | ) | |
| Respondents. | ) | Filed: May 20, 2025 |

### Introduction

Appellant 3018 Pershall, LLC bought a commercial property containing a billboard from its affiliate company, which had purchased that property at a tax sale. Appellant sued Respondents LMRK Propco ("Landmark"), which owns an easement allowing it to access and lease space on the property for the billboard, and Outfront Media LLC ("Outfront"), the lessee of space on the property for the billboard, for declaratory judgment and to quiet title. After a bench trial, the trial court entered judgment against Appellant, finding that Respondents held interests in the property that survived the tax sale.

On appeal, Appellant alleges the trial court erred in entering judgment for Respondents because Landmark's alleged easement violates public policy and Landmark does not have a valid easement that survived the tax sale. Appellant also argues it gave proper notice to all parties and

owns the property outright because Respondents failed to raise a necessary affirmative defense to the contrary. Finally, Appellant avers the trial court's refusal to declare that Appellant owns the property outright amounts to a failure by the trial court to issue a single, final judgment.

Appellant provides no Missouri authority for its claim that the easement is void for public policy reasons, and Landmark holds a valid easement under Missouri law. The trial court did not err in adjudicating the notice issue, as Respondents were not required to raise an affirmative defense and otherwise rebutted Appellant's *prima facie* evidence of notice. Appellant's final point that the trial court failed to issue a single, final judgment is unpreserved, and we decline to review it. We affirm the trial court's judgment.

## Factual and Procedural Background

### Facts

Appellant owns 3018 Pershall, a small plot of land measuring roughly 105 feet by 120 feet located near Interstate 270 in St. Louis County. In the 1990s, National Advertising Company leased part of the property from the owner and constructed a billboard. This billboard occupies approximately a 30-foot by 50-foot section of the property. According to the lease, the sign was considered the property of National Advertising Company.

In 1997, Respondent Outfront's predecessor acquired National Advertising Company's lease and the billboard structure. In 1999, Outfront's predecessor entered a new lease with the owner of the property. Pursuant to the new lease, the lessee was required to pay as part of its rent "any taxes . . . paid or payable by LESSEE in connection with the Sign Structure(s) other than income taxes."

In 2010, Joseph Afshari, the then-owner of the property, entered an "Easement and Assignment of Lease Agreement" with LD Acquisition Company LLC. This easement was

2

transferred twice, most recently in 2017 to Respondent Landmark. The assignment of the lease made Landmark the lessor of the space on the property containing the billboard operated and owned by Outfront. The purported easement is made up of two parts: an exclusive easement and a non-exclusive easement. The exclusive easement was granted "for the purpose of leasing space on the Property to outdoor advertising tenants"; the non-exclusive easement is an access easement "in, to, under and across the Property adequate to allow ingress and egress to the [exclusive] Easement." The easement and assignment of lease documents were filed with the St. Louis County Recorder of Deeds.

Though Outfront paid its portion of the real estate taxes to Joseph Afshari from 2011 through 2018, it is undisputed that Afshari did not pay any real estate taxes on the property during that period. February Properties, an affiliate company of Appellant 3018 Pershall, LLC, purchased the property in a tax sale in August 2019. February Properties then applied for and received a collector's deed from St. Louis County on November 30, 2020. February Properties then sold the property to Appellant.

### Procedural Background

After Appellant purchased the property, it filed a lawsuit against Respondent Outfront on April 2, 2021. After the trial court ordered necessary parties joined to the lawsuit, Appellant filed its Amended Petition also naming Respondent Landmark and other third-party defendants. The trial court ultimately entered default judgment in favor of Appellant and against the third-party defendants.

Respondents Outfront and Landmark filed a motion for summary judgment on the third count of Appellant's Amended Petition, which the trial court granted. The remaining two counts proceeded to a one-day bench trial. Count I sought a declaratory judgment "that: (i) Plaintiff has

3

'free and clear ownership of the Property'; (ii) that Plaintiff 'also now owns, free and clear, all structures and improvements situated on the land'; and (iii) that Plaintiff owns such structures or improvements 'free and clear of any rights asserted by Defendants.'" Count II was an action to quiet title seeking the same relief as Count I.

During the bench trial, Appellant presented evidence of redemption notices it had sent to Joseph Afshari and his heirs, the Metropolitan Sewer District, SunTrust Bank, and others with potential interests in the property before it could receive a collector's deed. The trial court excluded some of this evidence, specifically Exhibit 7, which contained an affidavit and documents that Appellant submitted to St. Louis County in order to receive its collector's deed. The trial court excluded Exhibit 7 for lack of foundation due to the authenticating witness's evasive testimony and lack of personal knowledge.

The trial court held in its order and judgment that the property of Appellant 3018 Pershall, LLC, is burdened by Respondent Landmark's easement, which is a valid easement of record and/or in use. The trial court also held that the billboard survived the tax sale because it was an improvement within the scope and area of the easement.

Appellant now appeals the trial court's order and judgment.

**Discussion**

Appellant raises four points on appeal. Its first two points challenge the validity of Respondent Landmark's easement to access and lease the billboard on Appellant's property. In Appellant's first point, it argues the servitude was void *ab initio* because it violates public policy by avoiding taxes. In Appellant's second point, it argues that the servitude did not survive the tax sale because it is not a valid easement as required by Section 140.722.[1] Appellant's third point

---

[1] Unless otherwise indicated, all statutory references are to RSMo (2016) as amended.

challenges the trial court's refusal to determine whether Appellant owns the property outright because it provided the requisite notice to interested parties and Respondents did not plead an affirmative defense. Finally, Appellant's fourth point challenges the trial court's failure to adjudicate Appellant's outright ownership of the property as inconsistent with the trial court's duty to issue a single, final judgment.

## Standard of Review

In an appeal from a court-tried civil case, this Court's review is governed by *Murphy v. Carron*. *K.E.S. v. S.R.S.*, 700 S.W.3d 544, 551 (Mo. App. E.D. 2024); *E.M.B. v. A.L.*, 462 S.W.3d 450, 452 (Mo. App. E.D. 2015). *Murphy* sets forth the following standards of review: "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court applies *de novo* review to questions of law decided in court-tried cases. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

## Rule 84.04

Rule 84.04(d)(1) requires an appellant to "[s]tate concisely the legal reasons for the appellant's claim of reversible error" in its point relied on.[2] The requirements of Rule 84.04 are mandatory. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). While Appellant's points relied on meet the requirements of the rule, they go on to add subpoints and additional legal reasons for the claims of error. Thus, the points are multifarious in violation of Rule 84.04(d)(1), resulting in unpreserved allegations of error. *See T.G. v. D.W.H.*, 648 S.W.3d 42, 46, 49 (Mo. App. E.D.

---

[2] All Rule references are to the Missouri Supreme Court Rules (2023), unless otherwise indicated.

2022). We nonetheless choose to review Appellant's arguments *ex gratia* because they are readily understandable. *Wolk v. Grinnell Mut. Reinsurance Co.*, 701 S.W.3d 659, 668 (Mo. App. E.D. 2024).

Point I

Appellant's first point argues the trial court misapplied the law because the easement was void *ab initio* in that the easement violated public policy by frustrating the state's ability to collect taxes. Appellant offers some citations to Missouri cases for its proposition that contracts violating public policy are void *ab initio*, but those cases did not involve easements, were not decided on public policy grounds, or otherwise are inapt.[3] Thus, Appellant's Point I is bereft of any support in Missouri caselaw for its proposition that the legal interest before us violates public policy and is void *ab initio*.

Appellant defaults to the Restatement (Third) of Property, Section 3.1, which proposes a balancing test to determine whether a contract or servitude in connection with real property violates public policy. Restatement (Third) of Property (Servitudes) § 3.1 (Am. Law Inst. 2000). Pursuant to that test, Appellant urges us to "assess[] the impact of the servitude, identify[] the public interests that would be adversely affected by leaving the servitude in force, and weigh[] the predictable harm against the interests in enforcing the servitude." *Id.* § 3.1 cmt. i.

Appellant fails to acknowledge that no Missouri court has adopted the balancing test in Section 3.1 of the Restatement (Third). We decline to do so here, leaving Appellant's Point I

---

[3] Appellant refers us to two cases deciding contracts were void as against public policy. *Eisenminger v. Nat'l Indem. Co.*, 699 S.W.3d 583 (Mo. App. W.D. 2024) (citing *Hays v. Mo. Highways Transp. Comm'n*, 62 S.W.3d 538, 540 (Mo. App. W.D. 2001)) (assignment of personal injury claims); *Hosp. Dev. Corp. v. Park Lane Land Co.*, 813 S.W.2d 904 (Mo. App. W.D. 1991) (practice of architecture without a license).

without legal support.[4] Appellant's public policy argument is better directed to the Missouri General Assembly.

Point I is denied.

Point II

Appellant's second point argues the trial court misapplied the law because the easement was extinguished by the tax sale pursuant to Section 140.722. Section 140.722 provides, "Any sale of lands under this chapter shall be subject to valid recorded covenants running with the land and to valid easements of record or in use." Appellant argues Landmark's interest is not an easement at all, and is not a "valid easement of record or in use" under the terms of Section 140.722.

"'Statutory interpretation is a question of law, which is reviewed *de novo*.'" *Wolk*, 701 S.W.3d at 665 (quoting *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 122 (Mo. banc 2023)). In interpreting a statute, this Court must "'give effect to legislative intent as reflected in the plain language of the statute at issue.'" *Id.*

*Valid Easement*

First, this Court must determine whether Landmark's interest is a valid easement. Section 140.722 does not define the term "valid." According to the dictionary definition, "valid" means "having legal strength or force . . . ." *Valid*, *Webster's Third New International Dictionary* (1966); *see also AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 132 (Mo. banc 2014) (identifying *Webster's Third New International Dictionary* as "the institutional dictionary

---

[4] Rule 84.04(e) requires that appellants "develop an argument by citing legal authority or explaining the failure to cite such authority." *Williams v. St. Charles Auto Mart, Inc.*, 690 S.W.3d 495, 503 (Mo. App. E.D. 2024). "'When an appellant fails to cite relevant law and explain how it applies to the applicable facts, we deem the point abandoned.'" *Id.* (quoting *Murphy v. Steiner*, 658 S.W.3d 588, 593 (Mo. App. W.D. 2022)).

7

of choice"). Accordingly, we inquire whether the interest before us is an easement "having legal strength or force" to determine its validity.

The document transferring the interest at issue refers to it as an "easement." But we do not look solely to the terminology in the document of transfer to determine "the true nature and legal character of the rights" transferred therein. *K.C. Area Transp. Auth. v. Ashley*, 485 S.W.2d 641, 644 (Mo. App. 1972).

"An easement is a non-possessory interest in the real estate of another . . . ." *Suedkamp v. Taylor*, 578 S.W.3d 408, 414 (Mo. App. E.D. 2019). "An easement, strictly speaking, does not carry any title to the land over which it is exercised; it is rather a right to use the land for particular purposes." *St. Charles Cnty. v. Laclede Gas Co.*, 356 S.W.3d 137, 139 (Mo. banc 2011) (internal quotations omitted); *see also Burg v. Dampier*, 346 S.W.3d 343, 353 (Mo. App. W.D. 2011). An easement "is nonetheless a right that can be enforced at law or in equity." *Suedkamp*, 578 S.W.3d at 414 (citing *Burg*, 346 S.W.3d at 353); *see also St. Charles Cnty.*, 356 S.W.3d at 139–40 ("Although an easement does not vest title, an easement is a form of private property . . . .").

"Easements are either 'appurtenant' or 'in gross.'" *Tenampa, Inc. v. Bernard*, 616 S.W.3d 327, 334 (Mo. App. W.D. 2020) (quoting *Burg*, 346 S.W.3d at 353) (internal quotations omitted). Easements appurtenant require both a dominant parcel (benefitting from the easement) and a servient parcel (which is burdened by the easement). *Id.* at 334. An easement in gross belongs to the easement holder "independently of his ownership or possession of other land, and thus lacking a dominant tenement." *Henley v. Continental Cablevision of St. Louis Cnty., Inc.*, 692 S.W.2d 825, 827 (Mo. App. E.D. 1985). An easement in gross conveys only a personal interest in the servient parcel. *Tenampa*, 616 S.W.3d at 334.

8

In the instant case, we are presented with an easement in gross. First, it is an easement because it is "a right to use the land for particular purposes." *St. Charles Cnty.*, 356 S.W.3d at 139. The document creating the easement grants Landmark (as the successor to grantee LD Acquisition Company LLC) a non-exclusive access easement and an exclusive easement over the space on the property on which the billboard is situated, "for the purpose of leasing space on the Property to outdoor advertising tenants . . . ." It is an easement in gross because there is no dominant tenant, only a servient parcel. *Tenampa*, 616 S.W.3d at 334.[5]

Appellant nevertheless argues the interest at issue here is not an easement, but is instead one of two very different property rights. On one hand, Appellant claims the transfer was of title in fee simple absolute, disguised as an easement. "A fee simple absolute includes the entire title; it is the most extensive interest one may have in property, comprehends an absolute estate in perpetuity, and is potentially infinite. In modern concepts these several terms, 'fee', 'fee simple', and 'fee simple absolute' are substantially synon[y]mous." *Vaughan v. Compton*, 235 S.W.2d 328, 331 (Mo. Div. 1 1950). Appellant argues that the easement's substance more closely matches fee title to the property since it "has blanket coverage of the entire landmass of the Property" and "[i]ncludes a right to possession of the land." Appellant claims that Respondent Landmark effectively owns the whole property.

---

[5] While easements in gross are typically not transferrable since they are personal to the grantee, *see Tenampa*, 616 S.W.3d at 334, this is not true of commercial easements in gross. *See Ashley*, 485 S.W.2d at 645 (citing Restatement of Property § 489 (Am. Law Inst. 1944)); *see also* 4 Powell, Powell on Real Property, § 34.16 (2014) (citing *Ashley*, 485 S.W.2d at 645) ("Easements in gross for . . . business structures have been held transferrable by American courts almost without exception."). There is also an exception for easements in gross where there is an express intent by the parties that the interest is transferrable. *Tenampa*, 616 S.W.3d at 337. Both are true here because this is a commercial easement and the terms of the agreement "shall be binding upon . . . the successors and assigns of the parties to this Agreement."

Appellant's argument is not supported by the facts. The easement does not grant either Landmark or Outfront use of the whole property, either in terms of area or the extent to which Respondents may use the property. Neither does the billboard itself occupy the entire property. The evidence at trial established that the billboard has two faces measuring 14 feet by 48 feet and the dimensions of the portion of the property on which it is situated are 30 feet by 55 feet. By comparison, the entire property's dimensions are approximately 105 feet by 120 feet, meaning the billboard occupies less than half the property.

The recorded easement also offers some insight into its limited area. The exclusive easement "for leasing space on the Property to outdoor advertising tenants" clearly refers to the limited space pertaining to the billboard. The non-exclusive access easement is limited to access "in, to, under and across the Property adequate to allow ingress and egress to the Easement."

Further, Landmark is limited in its use of the property. The easement is expressly limited to the purposes to "lease space to Tenants in the billboard and telecommunications businesses" and "to allow ingress and egress to the Easement." These explicit restrictions obviously do not amount to a fee simple estate in the property, pursuant to which the owner may "do with it what he desires." *Id.* at 331.

Contrary to Appellant's position, that Landmark may use its exclusive easement over a portion of the property to lease to Outfront, which owns and operates the billboard, does not transform Landmark's interest into fee title to the property. This Court in *Henley*, 692 S.W.2d at 826–27, 829, concluded that a telephone company could allow a cable company to place its cable on telephone poles that the telephone company had constructed on the property by virtue of an easement. The telephone company, the owner of the easement, could grant the cable company the

use of its telephone poles because the owner of an exclusive easement in gross can apportion its right. *Id.* at 827.

Appellant points out that, here, we deal not with a telephone pole, but a billboard that takes up a much larger share of the property. Still, Landmark's role as lessor is expressly part of the "intended and authorized use" of the easement granted "for the purpose of leasing space on the Property to outdoor advertising tenants . . . ." If adding a coaxial cable to existing telephone poles did not burden the property beyond the scope of the telephone line easement, *Henley*, 692 S.W.2d at 828, then *a fortiori* operating and changing advertisements on the existing billboard does not burden the property beyond the scope of the easement created precisely for those purposes.[6]

On the other hand, Appellant suggests that perhaps the interest at issue here is not an easement or fee simple, but a *profit a prendre* because Respondent Landmark may profit from the proceeds generated by the billboard. Appellant misconstrues "profit" in this context.

The term "*profit a prendre*" was dropped from the Restatement of Property as long ago as 1944, *see Harrison v. State Highways and Transp. Comm'n*, 732 S.W.2d 214, 220 n.3 (Mo. App. S.D. 1987) (citing Restatement, Property, § 450, Special Note (1944)), and merged into its definition of "easement," *see* Restatement, Property § 450, Special Note (1944) ("In this Restatement the term 'easement' is so used as to include within its meaning the special meaning commonly expressed by the term 'profit.'"). Appellant's attempted distinction of a *profit a prendre* from an easement appears to be a distinction without a difference.

---

[6] If Respondents were to exceed the bounds of the easement, Appellant could seek redress in trespass. *See Reinbott v. Tidwell*, 191 S.W.3d 102, 109 (Mo. App. S.D. 2006) ("If an easement holder, while lawfully on the servient land, exceeds his rights under the easement in either the manner or extent of his use, he becomes a trespasser to the extent of the unauthorized use." (internal quotations omitted)).

Even if Missouri continued to recognize a profit as a distinct legal interest, Landmark's interest would remain an easement. Though Landmark may profit from the billboard, that fact does not render its interest a *profit a prendre* and not an easement. A *profit a prendre* generally was understood to refer to a "legal right to take a profit from something yielded or produced by land." *Profit a Prendre*, *Webster's Third New International Dictionary* (1966); *see also Profit a Prendre*, *Black's Law Dictionary* (9th ed. 2009) ("A right or privilege to go on another's land and take away something of value from its soil or from the products of its soil (as by mining, logging or hunting)."). Suffice to say any profits Landmark gains from the billboard are not akin to profits produced from the land itself, such as "mining, logging or hunting." As confirmation of that point, plenty of Missouri cases reference easements that yield profits to their holders. *See, e.g., Ashley*, 485 S.W.2d at 645 ("[U]nder the modern rule easements in gross are assignable if commercial in character.").[7]

All of this is to say that this property interest is a valid easement, that is, an easement having legal strength or force, and not one of the various other property interests alleged by Appellant.

*Valid Easement of Record or in Use*

Next, we address the trial court's conclusion that this easement is "of record" and "in use." In addition to its requirement of a valid easement, Section 140.722 also requires an easement either "of record or in use." The trial court found both. The trial court correctly concluded that this easement is "of record," as the trial evidence demonstrated that the easement was recorded in St. Louis County, the locus of the property, and Appellant does not challenge that fact. *See Hall v.*

---

[7] The interest at issue here also is not a license, given that the Easement and Assignment of Lease Agreement specifically states, "Grantor may not terminate this Agreement . . . ." (Exhibit B, L.F. 23:3). An essential characteristic of a license is that it is freely terminable by the grantor. *See Tenampa*, 616 S.W.3d at 336 (quoting *Ashley*, 485 S.W.2d at 644).

*Allen*, 771 S.W.2d 50, 53 (Mo. banc 1989). The uncontroverted evidence also proved that the easement continues "in use."

This easement is a valid easement of record or in use and therefore survived the tax sale pursuant to Section 140.722.

Point II is denied.

Point III

In Appellant's third point, it alleges the trial court misapplied the law in declining to adjudicate Appellant's ownership of the property because Respondents failed to plead an affirmative defense of insufficient notice. What Appellant appears to challenge is the trial court's alleged refusal to adjudicate its claim in the First Amended Petition that "[t]he requirement[s] of RSMo. § 140.405(2) were fulfilled to 'notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien, or claim upon that real estate of the latter's rights to redeem his security or claim'."[8]

In fact, the trial court did adjudicate Appellant's rights of ownership relative to Respondents' rights. The trial court specifically held that "due to [Appellant's] failure of proof regarding notice, [Respondents'] interests in the Property (i.e., the Easement and sign structure) are superior to those of [Appellant] pursuant to RSMo 140.405(8)."

Section 140.405(2) requires tax purchasers to provide notice to persons who hold recorded claims upon the purchased real estate. Appellant argues that the trial court should have decided it

---

[8] Though Appellant's First Amended Petition purports to directly quote the language of Section 140.405(2), that quotation is incorrect. Section 140.405(2) states, in pertinent part, "At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify the owner of record and any person who holds a publicly recorded unreleased deed of trust, mortgage, lease, lien, judgment, or any other publicly recorded claim upon that real estate of such person's right to redeem the property."

owned the property outright relative to Respondents because it produced a collector's deed, which is, according to Section 140.460:

> prima facie evidence that the property conveyed was subject to taxation at the time assessed, that the taxes were delinquent and unpaid at the time of sale, of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, that said land or lot had not been redeemed and that the period therefor had elapsed, and prima facie evidence of a good and valid title in fee simple in the grantee of said deed . . . .

The upshot of Appellant's reading of Section 140.460 is that because it has *prima facie* evidence of "good and valid title in fee simple in the grantee of said deed," Appellant owns the property unencumbered. Appellant also wields its collector's deed as *prima facie* evidence that Appellant provided proper notice to Respondents.

Appellant is correct insofar as the collector's deed is *prima facie* evidence that proper notice was given to the parties. The Missouri Supreme Court held in *Mitchell v. Atherton*, 563 S.W.2d 13, 17–18 (Mo. banc 1978), that a collector's deed, under Section 140.460, would be "prima facie evidence of notice in compliance with the law because notice and sale would be 'prior proceedings' under sec. 140.460."[9] The Court went on to observe, however, that "[t]his would not prevent an opponent from offering evidence at variance with the title." *Id.* at 18.

Appellant thus is incorrect that Respondents were required to plead an affirmative defense to rebut Appellant's *prima facie* evidence. "[P]rima facie evidence is not conclusive evidence." *Wattree v. Div. of Emp't Sec.*, 698 S.W.3d 471, 479 (Mo. App. W.D. 2024). "*Prima facie* evidence is such evidence which does not necessarily compel a verdict for the party whose contention it

---

[9] Although Section 140.460 was amended in 2013, the language interpreted by the Court remains the same. *Compare* Section 140.460 ("Such deed shall be prima facie evidence . . . of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, . . ."), *with Mitchell*, 563 S.W.2d at 17 (quoting Section 140.460 (1969)) ("Sec. 140.460, subsec. 2, RSMo 1969, provides that a tax deed is to be 'prima facie evidence . . . of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, . . .'").

supports, but is sufficient to satisfy the burden of proof to support a verdict in favor of the party by whom it is introduced when not rebutted by other evidence." *Id.* (quoting *Hodel v. Dir. of Revenue*, 61 S.W.3d 274, 278 n.7 (Mo. App. S.D. 2001)) (internal quotations omitted). Unlike an affirmative defense, a rebuttal does not "'aver[] that . . . the allegations of the petition are taken as true . . .'" *Giudicy v. Mercy Hosps. E. Comtys.*, 645 S.W.3d 492, 500 (Mo. banc 2022) (quoting *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 428 (Mo. banc 2016)).

Instead, to rebut *prima facie* evidence, a party presents "substantial controverting evidence." *Wattree*, 698 S.W.3d at 479. This is true specifically regarding rebuttal of *prima facie* evidence of proper notice under Section 140.460, which allows an opponent to "offer[] evidence at variance with the title." *Mitchell*, 563 S.W.2d at 18. Accordingly, though Respondents did not plead an affirmative defense that notice was improper under Section 140.405, they were still able to rebut Appellant's *prima facie* evidence.

Among Respondents' rebuttal evidence was the trial testimony of J.W., the principal member of Appellant 3018 Pershall, LLC.[10] On direct-examination, J.W. testified to the contents of Exhibit 7, a packet Appellant submitted to St. Louis County to receive its collector's deed. J.W. listed all of the individuals and entities to whom Appellant sent notice via certified mail as part of the redemption process. Neither Respondents nor the individual members of their organizations were listed. On cross-examination, J.W. admitted he did not personally prepare any of the notices, mail any of the notices, or receive any return-notices from the intended recipients. Also, Respondents established that no one attempted to identify the holder of the easement estate before

---

[10] The personal identifying information of victims and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

submission of the packet for the collector's deed, despite that the easement appeared on the title report.

Respondents also challenged the credibility of Appellant's other evidence of notice. Appellant claimed its process server posted notice on the billboard itself. But Respondents elicited that the process server's photographs of the posted notice were of such poor quality that the text of the notice could not be seen to be verified, two photographs of allegedly the same notice appeared to differ, and J.W. did not personally verify that notice was posted on the billboard.[11]

Due to J.W.'s evasiveness and lack of personal knowledge, the trial court excluded Exhibit 7 and found that Appellant presented no credible evidence of the statutorily required notice. The trial court also found that the "title report and the documents referenced in it clearly showed both 'leasehold' and 'easement' interests related to Outfront's and Landmark's rights in the Property" and that "no notice of redemption was provided to Outfront or Landmark, respectively."

"In questions of fact, we defer to the circuit court's assessment of the evidence and its credibility findings." *Ducote v. Dir. of Revenue*, 577 S.W.3d 170, 174 (Mo. App. E.D. 2019). The trial court "'is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.'" *White v. Dir. of Revenue*, 321 S.W.3d 298, 308–09 (Mo. banc 2010)(quoting *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009)).

---

[11] Regardless, notice posted on the billboard would not have met the requirements of Section 140.405 as a matter of law. Section 140.405(2) requires notice "by both first class mail and certified mail return receipt requested." Other means of notice are authorized only when "both the certified notice return receipt card is returned unsigned and the first class mail is returned for any reason except refusal, where the notice is returned undeliverable." RSMo § 140.405(4).

Respondents thus rebutted Appellant's collector's deed as *prima facie* evidence of notice to Respondents, and substantial evidence supported the trial court's finding that Appellant failed to provide proper notice to Respondents.[12]

For all the above reasons, we find the trial court adjudicated Appellant's rights in the property and did not misapply the law in concluding that Respondents have superior rights.

Point III is denied.

Point IV

Appellant argues in its fourth point that the trial court erroneously declared the law by declining to adjudicate its ownership of the property because Sections 511.130 and 511.140 require a single, final judgment.

For an issue to be preserved on appeal, it must be presented to the trial court. *Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC*, 361 S.W.3d 364, 370 n.2 (Mo. banc 2012); *see also* Rule 78.07. "In a case tried without a jury, a motion for a new trial or a motion to amend the judgment is not required to preserve an issue for appellate review 'if the matter was previously presented to the trial court.'" *Williams v. Williams*, 669 S.W.3d 708, 717 (Mo. App. E.D. 2023) (quoting Rule 78.07(b)). "[S]uch motions are necessary when . . . the matter was not presented to the trial court." *Id.* at 717. Appellant did not raise this issue before the trial court or in its Motion to Amend Judgment or New Trial. Thus, the issue is not preserved. *See Estate of Overbey*, 361 S.W.3d at 370 n.2; *Williams*, 669 S.W.3d at 717.

---

[12] There is authority for the proposition that, with some exceptions, a tax purchaser who fails to provide proper notice pursuant to Section 140.405 loses title to the property altogether. *See* RSMo § 140.405(8); *Sneil, LLC v. Tybe Learning*, 370 S.W.3d 562, 568 (Mo. banc 2012) ("The failure to comply with the § 140.405 notice requirements by the purchaser at a delinquent tax sale will result in the loss of all interest in the real property as a matter of law."). Respondents do not press this issue on appeal, and we do not address it.

This Court has discretion to review unpreserved issues for plain error. *Lyon Fin. Serv., Inc. v. Harris Cab Co., Inc.*, 303 S.W.3d 589, 590 (Mo. App. E.D. 2010); Rule 84.13(c). "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). "'[T]o reverse for plain error in a civil case, the injustice must be so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case.'" *O'Haver v. 3M Co.*, 698 S.W.3d 730, 739 n.5 (Mo. App. W.D. 2024) (quoting *Williams v. Mercy Clinic Springfield Cmtys.*, 568 S.W.3d 396, 412 (Mo. banc 2019)). Plain error review therefore rarely is granted in civil cases. *Int. of J.C.S.*, 658 S.W.3d 260, 265 (Mo. App. S.D. 2023); *Mayes v. Saint Luke's Hosp. of Kan. City*, 430 S.W.3d 260, 269 (Mo. banc 2014).

Also, "[t]his Court will not, '*sua sponte*, review for plain error' when an appellant has not requested that analysis." *Int. of K.C.G.*, 689 S.W.3d 759, 764 (Mo. App. S.D. 2024) (quoting *Int. of J.C.S.*, 658 S.W.3d 260, 265 (Mo. App. S.D. 2023)).

We do not perceive any error remotely approaching an "injustice . . . so egregious as to weaken the very foundation of the process," and Appellant has not requested plain error review. We decline to review for plain error.

Point IV is denied.

### Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

18

_____
Cristian M. Stevens, J.,

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.

19